## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| TELEPHONE SCIENCE CORPORATION, | Case No. 6:15-cv-00969-CEM-DAB |
| Plaintiff, | **DEFENDANT HILTON GRAND VACATIONS COMPANY, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;** MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT |
| vs. | |
| HILTON GRAND VACATIONS COMPANY, LLC, | |
| Defendant. | |

Defendant Hilton Grand Vacations Company, LLC ("Defendant" or "Hilton"), by and through its undersigned counsel, hereby moves this Court to enter an order dismissing this case in its entirety with prejudice, as well as granting any further relief that the Court may deem just and proper.  Defendant brings this Motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Rule 3.01 of this Court's Local Rules.  The requested relief is based on this Motion, the Memorandum of Legal Authority that follows, and all prior pleadings and proceedings in this action, as well as all matters of which the Court may take judicial notice.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................................1

II.     QUESTIONS PRESENTED ...........................................................................................2

III.    STATEMENT OF PLEADED AND JUDICIALLY NOTICEABLE FACTS ...........................................3

        A.      TSC's "Nomorobo" Service .................................................................................3

        B.      TSC's "Honeypot" ...............................................................................................4

        C.      TSC Sues Several Companies "Caught" In Its "Honeypot" ...................................5

IV.     ARGUMENT .................................................................................................................6

        A.      TSC is Outside the TCPA's Zone of Interests Because TSC Purposely
                Attracted the Calls as Part of its Business ............................................................6

        B.      TSC Waived any Right not to Receive the Alleged Calls by Creating a
                Business Designed Specifically to Attract those Calls .........................................10

        C.      TSC Does Not Have Article III Standing to Bring This Lawsuit Because It
                Has Not Suffered Any Injury At All—And, In Fact, TSC Benefits from
                the Telemarketing Calls Over Which It Now Sues................................................10

        D.      TSC Cannot Sue under Section 227(b)(1)(A)(iii) as that Section only
                Applies to Calls to Consumers and Does Not Apply To Businesses....................12

        E.      Section 227(b)(1)(A)(iii)'s Reference to "Any Service" means "Any
                Service" like the four Specific Services listed in that Section.............................15

V.      CONCLUSION............................................................................................................17

## I.    INTRODUCTION

This lawsuit may be reduced to one question: Should a company whose core business

model depends on attracting and receiving telemarketing calls be able to sue under a statute

designed to provide relief to those who wish to avoid receiving those calls?

Plaintiff Telephone Science Corp.'s ("TSC" or "Plaintiff") business depends on its ability

to attract and analyze telemarketing calls, and toward that end, it has purchased tens of thousands

of telephone numbers specifically selected for their high propensity to receive telemarketing

calls. Among these hoarded tens of thousands of telephone numbers, some previously were

assigned to Hilton's customers, whose numbers Hilton lawfully was entitled to call.[1] So armed

with a "honeypot" to attract a large volume of telemarketing calls, TSC has developed a novel

scheme to finance its operations by exploiting the TCPA,[2] whereby it waits for unsuspecting

companies like Hilton to continue calling its existing and potential customers. Once the calls

sufficiently add up (while TSC remains silent and watches the potential statutory damages reach

tantalizingly high levels), TSC files suit, seeking to collect millions under the TCPA's statutory

damages provisions.

This scheme should not be countenanced by this Court. In designing its business to

depend on deliberately attracting and receiving telemarketing calls, TSC has placed itself outside

the TCPA's zone of interests, has waived its rights to sue based on receiving the telemarketing

calls it deliberately attracts, and has suffered no harm to sustain this Court's Article III

jurisdiction. If TSC were to have its way, it would receive an immense and unlawful windfall, on

the one hand profiting by providing services derived from the receipt and analysis of

---

[1] Hilton does not make "cold calls."  Substantially all telephone numbers that Hilton calls are obtained from Hilton customers with whom Hilton has an established business relationship.

[2] Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").

telemarketing calls, and on the other hand reaping statutory penalties when it has not suffered the harm that Congress meant to redress in passing the TCPA.

Moreover, Hilton is not among the bad actors that the TCPA was designed to deter. Hilton has designed and invested extensively in a complex and rigorous data hygiene process and calling system based on the TCPA's requirements and the Federal Communications Commission's ("FCC") regulations. Far from the indeterminate, pre-recorded calls that are the focus of the TCPA (and of TSC's services, incidentally), Hilton carefully controls the numbers it calls to ensure it calls only Hilton customers, and it does not employ pre-recorded messages in reaching out to those customers. This is precisely the kind of thoughtful and targeted marketing activity that spurred Congress to observe, "Individuals' privacy rights, public safety interests and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and **permits legitimate telemarketing activities**." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat 2394 (1991) (emphasis added).

For these reasons and the reasons discussed below, this action should be dismissed with prejudice.

## II.   QUESTIONS PRESENTED

This motion raises five main issues:

1.  **Zone of Interests.** To state a claim, a plaintiff must fall within the "zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (Scalia, J., writing for unanimous Court).  Here TSC's business is to operate an "information system designed to attract robocallers… [to] gain enhanced insight into robocallers' tactics." (Compl. [ECF No. 1] ¶ 11.) Do TSC's claims for receiving calls that it purposely attracted fall within the TCPA's zone of protected interests?

2.  **Waiver.** The TCPA creates a right not to receive certain calls. Waiver is the intentional relinquishment of a known right. Did TSC waive its right not to receive the calls in question by using a system intentionally designed to attract them?

3.      **Standing.** Does TSC have Article III standing to maintain this lawsuit where it has suffered no injury-in-fact? TSC's business model **depends on** receiving calls from companies using autodialers, and therefore, TSC stands only to **benefit** from such calls. Moreover, TSC has failed to plead that it answered or was charged for any of the calls it received from Hilton. Under these circumstances, does TSC have standing to sue?

4.      **Scope.** The TCPA instructs the FCC to "consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent." 47 U.S.C. § 227(b)(2)(A). The FCC considered the matter but declined to pass a related regulation. Does the TCPA nonetheless apply to artificial or prerecorded voice calls to businesses?

5.      **Pleading / Telephone Service.** Section 227(b)(1)(A)(iii) of the TCPA only applies to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." Does "any service" mean "any service of any type" or "any service like the four services listed," such that TSC must plead the specific service it uses?

## III.     STATEMENT OF PLEADED AND JUDICIALLY NOTICEABLE FACTS

### A.      TSC's "Nomorobo" Service

Plaintiff TSC is a corporation based in Mount Sinai, New York. (First Amended Compl. [ECF No. 16] (hereinafter "FAC") ¶ 1.) Its primary business is to operate "Nomorobo," which TSC (or TSC's affiliates) apparently created as part of an FTC[3]-sponsored contest to stop unsolicited telemarketing calls. (*See id.* at ¶¶ 5-7.) "Nomorobo allows unwanted robocalls to ring the subscriber's telephone number once." Order at 1, *Telephone Science Corp. v. Trading Advantage LLC*, No. 1:14-cv-04369 (N.D. Ill. Feb. 17, 2015), ECF No. 81 ("Trading Advantage Order"). Nomorobo uses simultaneous ringing to route calls to Nomorobo's telephone system in addition to the subscriber's phone. Nomorobo's "line hangs up on [alleged] illegal robocalls before they can ring through to the subscriber." *Id.* "Nomorobo uses its technology to 'blacklist'

---

[3] The Federal Trade Commission is referred to herein as "FTC."

robocaller phone numbers and 'whitelist' numbers associated with acceptable incoming calls."
*Id.*

### B.    TSC's "Honeypot"

To support Nomorobo, TSC maintains a "honeypot" of telephone numbers. (FAC ¶ 10.)
A honeypot is "an information system designed to attract robocallers." (Compl. [ECF No. 1]
(hereinafter "Compl.") ¶ 11.)[4] By attracting robocallers, TSC is "able to gather information
related to" robocalling patterns that TSC then feeds into Nomorobo. (FAC ¶ 10.) TSC has
purchased over 65,000 telephone numbers from its telecommunications carrier, Twilio, to create
a large data set for its research into high frequency robocalling, which it then uses to operate its
Nomorobo business. *See* Trading Advantage Order at 2. Twilio places all numbers that it
purchases from larger phone companies into a virtual "holding tank," where the number of calls
to that number is recorded for a period of time prior to assigning any number to a customer. *Id*.
Twilio seeks to assign only those phone numbers that do not receive a significant number of
telemarketing calls to its own customers. Numbers that do not receive any calls during the period
of time in the "holding tank" are considered "clean" and are assigned to Twilio's own customers.
Numbers that receive a high volume of calls during the time period in the "holding tank" are

---

[4] Due to arguments made in another lawsuit that TSC brought against a different defendant,
alleging similar harm stemming from the proper functioning of its telemarketing-attracting
honeypot, TSC amended its original Complaint in this action, attempting to make it less obvious
that the very purpose of its existence is to profit from incoming telemarketing calls. (*Compare*
Compl. ¶ 11 *with* FAC ¶ 29 ("TSC does not solicit or otherwise entice callers to call any TSC
number.").) However, while a plaintiff may be permitted to correct mistakes in a complaint by
amending it, "a statement in a complaint may serve as a judicial admission." *Sicor Ltd. v. Cetus
Corp.*, 51 F.3d 848, 859 (9th Cir. 1995); *accord Andrews v. Metro North Commuter R.R. Co.*,
882 F.2d 705, 707 (2d. Cir 1989) ("The amendment of a pleading does not make it any less an
admission of the party."). When the plaintiff amends a complaint but cannot "provide a credible
explanation for its 'error,' the Court may disregard the contradictory pleading." *Bauer v. Tacey
Goss, P.S.*, No. 12-CV-00876-JSW, 2012 WL 2838834, at *3 (N.D. Cal. July 10, 2012). Any
assertion that TSC's honeypot is not designed with the primary purpose of attracting
telemarketing activity should be disregarded.

considered "dirty" and are not assigned to Twilio's customers. Instead, **TSC buys Twilio's "dirty" phone numbers for use in its honeypot**. *Id.* The 988 numbers that are the subject of this lawsuit are part of TSC's "honeypot" group of numbers—i.e., the "dirty" numbers that TSC purchased from Twilio.

Importantly, TSC alleges that Twilio "assesses a per-minute charge to TSC for each incoming call it receives" (FAC ¶ 25), **but it does not allege that any of Hilton's alleged calls to the honeypot ever was answered**, such that a per-minute charge actually may have been assessed.

### C.   TSC Sues Several Companies "Caught" In Its "Honeypot"

Hilton is one of five defendants TSC sued under the TCPA. The other lawsuits are as follows:

- *TSC v. Trading Advantage LLC*, Case No. 1:14-cv-04369 (N.D. Ill., filed June 12, 2014);
- *TSC v. Credit Management, LP*, Case No. 2:15-cv-04122 (E.D.N.Y., filed July 14,  2015);
- *TSC v. Pizzo*, Case No. 2:15-cv-01702 (E.D.N.Y., filed March 30, 2015); and
- *TSC v. Asset Recovery Solutions*, Case No. 1:15-cv-05182 (N.D. Ill., filed June 12, 2015).

On June 12, 2015, TSC filed this lawsuit against Hilton. Hilton develops, manages, markets, and operates a system of time-share resorts that "members of the Hilton family" can jointly own along with other "members of the Hilton family." (FAC, ¶ 14.) Critically, Hilton scrupulously adheres to the TCPA's restrictions and relevant FCC regulations, calling only those customers with whom it has a relationship. TSC alleges that in the seventeen months from March 2014 to August 2015, Hilton made approximately 14,100 calls total to 988 telephone numbers in TSC's honeypot. (*Id.* at ¶ 32; *id.* at Ex. A.) That averages to about 0.8 calls per month per number.

IV.   <u>ARGUMENT</u>

A.   <u>TSC is Outside the TCPA's Zone of Interests Because TSC Purposely Attracted the Calls as Part of its Business</u>

TSC's business model relies on a "honeypot" of thousands of telephone numbers to identify and block Nomorobo subscribers' calls from suspected telemarketers. (FAC ¶ 10.) "According to the FTC, a robocall 'honeypot' is 'an information system designed to attract robocallers . . . .'" (Compl. ¶ 11 (citing *FTC Announces Winners of 'Zapping Rachel' Robocall Contest*," https://www.ftc.gov/news-events/press-releases/2014/08/ftc-announces-winners-zapping-rachel-robocall-contest).) Accordingly, far from being a telephone consumer who wishes to be free from incoming telemarketing calls, TSC's entire business model[5] depends on its ability to seek out and attract those very calls. The fact that it was successful in doing so cannot serve as grounds to sue the companies that make those calls.

The U.S. Supreme Court has repeatedly held "that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark*, 134 S. Ct. at 1388, quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984). This "limitation" "applies to all statutorily created causes of action; . . . is a 'requirement of general application'; and . . . Congress is presumed to 'legislate against the background of' the zone-of-interests limitation, 'which applies unless it is expressly negated.'" *Lexmark*, 134 S. Ct. at 1388. "The zone-of-interests test is . . . an appropriate tool for determining who may invoke [a] cause of action . . . ." *Id.* at 1388-89. "[T]he breadth of the zone of interests varies according to the

---

[5] TSC may try to tell the Court that Nomorobo's services are free for subscribers, and, therefore, the company is not really a business. However, TSC hopes "to make money by offering the service to businesses like call centers, which have expressed an interest." Alina Tugend, *Working to Block Those Advertising Annoyances*, N.Y. Times (Feb. 21, 2014), *available at* http://www.nytimes.com/2014/02/22/your-money/free-ways-to-stop-unwanted-ads-phone-calls-and-mail.html. TSC is a business and should be treated as such, no matter its current cash flow.

provisions of the law at issue . . . ." *Id.* at 1389. If a plaintiff's interests are "inconsistent with the purposes implicit in the statute," *id.*, then it may not invoke that statute in order to bring a lawsuit. Therefore, even though the TCPA grants a right to sue to any "person or entity," 47 U.S.C. § 227(b)(3), even this seemingly broad authorization must be evaluated against Congress's purposes in enacting the statute—both express and implied.

TSC and the calls it claims violate the TCPA fall squarely outside "the purposes implicit in the statute." The Telephone **Consumer** Protection Act was designed to give **consumers** the right to **avoid** telemarketing phone calls. TSC is not only not a consumer within the purpose of the statute (more on that later), but it **purposefully attracts** such phone calls as part of its core method of doing business. TSC's interests, therefore, are not only in tension with the TCPA's purpose, but they run counter to its fundamental design, as is evident in the statute, its legislative history, judicial interpretations, and regulatory decisions, for example:

- **The TCPA** – "PURPOSE OF THE BILL [¶] The purposes of the bill are **to protect the privacy interests of residential telephone subscribers** . . . **and to facilitate interstate commerce** . . . ."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat 2394 (1991) (emphasis added).

- **The TCPA (Elaborating)** – "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, **is the only effective means of protecting telephone consumers from this nuisance and privacy invasion**." *Id.* (emphasis added).

- **The TCPA's Legislative History** – "The Committee believes that Federal legislation is necessary to protect the public from automated telephone calls. These calls can be an **invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services**." S. REP. No. 102-178 at 5 *reprinted in* 1991 U.S.C.C.A.N. 1986, 1972-73 (1991) (emphasis added).

- **Courts of the Eleventh Circuit** – "The TCPA was intended **to protect individuals from unsolicited automated telemarketing calls**, and to deter callers from utilizing such calls in an unregulated fashion."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1321 (S.D. Fla. 2012) *aff'd*, 755 F.3d 1265 (11th Cir. 2014) (emphasis added). *Accord De Los Santos v. Millward Brown, Inc.*, 2014 WL 2938605, at *5 (S.D. Fla. June 30, 2014)

("[T]he Committee on Commerce, Science, and Transportation explained that the general purpose of the TCPA was '**to protect the privacy interests of residential telephone subscribers** by placing restrictions on unsolicited, automated telephone calls **to the home** and **to facilitate interstate commerce by restricting certain uses of facsimile (tax) machines and automatic dialers**.'" (emphasis added)).

- **The Supreme Court** – "Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions **on intrusive nuisance calls**." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) (emphasis added).

- **The Supreme Court (Again)** – "The federal interest in regulating **telemarketing to protect the privacy of individuals** while permitting legitimate commercial practices . . . is evident from the regulatory role Congress assigned to the FCC." *Mims*, 132 S. Ct. at 751 (quotations and citations omitted) (emphasis added).

- **The FCC** – "Congress enacted the Telephone Consumer Protection Act . . . in an effort to address a growing number of telephone calls and certain telemarketing practices Congress found to be **an invasion of privacy**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 559 (Jan. 4, 2008) (emphasis added).

- **The FCC (Last Month)** – "Congress enacted the TCPA in 1991 to address certain practices thought to be **an invasion of consumer privacy** and a risk to public safety." *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72 (released July 10, 2015) (hereinafter "FCC July 10 Ruling") (emphasis added) (footnotes omitted) (pin cites unavailable).

Accordingly, the resounding consensus is that Congress enacted the TCPA to protect individual consumers from the invasive nature of telemarketing calls, their perceived threats to public safety, and their fax machine-clogging **detriments** to interstate commerce. By contrast and far from suffering any such detriment, TSC's business model **depends on receiving telemarketing calls** in order to fulfill its primary business purpose.

The District of New Jersey's decision of *Cellco Partnership v. Wilcrest Health Care Management. Inc.*, No. 09-3534, 2012 WL 1638056 (D.N.J. May 8, 2012), is instructive. In that case, Verizon, a telecommunications provider, sued a telemarketer under the TCPA arguing that it was injured when its employees received unsolicited calls on their company cellphones. *See id.*

at *2-3. The court dismissed Verizon's claims with prejudice finding that its "damages are not of the vexatious and intrusive nuisance nature sought to be redressed by the Congress in enacting the TCPA, but rather <u>are indirect, economic, and **inherent** to [Verizon's] business</u>." *Id.* at *8 (emphasis added). Additionally, "[t]he scale of the damages sought . . . further indicates that [TSC does] not fall into the zone of interests of the TCPA." Because "[t]he TCPA . . . anticipates damages on an individual basis . . . [,] Congress contemplated that TCPA plaintiffs would bring claims in small claims court without the aid of an attorney." *Id.* at *9. TSC, however, "seeks enormous damages" because its business is set up to ensnare telemarketing calls coming to any of its tens of thousands of telephone numbers "without acknowledging that the only reason for this volume of calls is due to the nature of their business, which is providing telecommunications services rather than consuming them." *Id.*, citing *Freedman v. Advanced Wireless Cellular Commc'ns,* No. SOM–L–611–02, 2005 WL 2122304 (N.J. Super. June 24, 2005) ("It would be manifestly unjust to subject [defendant] to a $23,000,000 judgment (including attorney's fees) for damages to an entire class of plaintiffs when Congress intended damages of $500 to be pursued by individual plaintiffs"). Accordingly, because Verizon's use of telephone numbers was different from the uses of individual consumers and other businesses, its interests were excluded from the TCPA's zone of interests, and Verizon could not bring a claim. *See id.*[6]

Similarly, TSC's claims arise from circumstances inherent in its business model, which is designed to attract telemarketing claims to its honeypot of telephone numbers. Accordingly, its interests fall outside of Congress's aims in enacting the TCPA, and TSC's claims must be dismissed with prejudice. *See id.* ("No amount of pleading additional facts as to either the details

---

[6] The *Cellco* court engaged in a zone-of-interest analysis using the term "prudential standing" before the U.S. Supreme Court clarified that such a term is a "misnomer" for this analysis. *Lexmark*, 134 S. Ct. 1387-88. This clarification does not undermine the veracity of *Cellco*'s holding.

of the [honeypot] . . . or calls received . . . will cure the essential jurisdictional defect of the Plaintiffs' lack of statutory or prudential standing.").

**B.** **TSC Waived Any Right Not to Receive the Alleged Calls by Creating a Business Designed Specifically to Attract Those Calls**

"[W]aiver is the intentional relinquishment of a known right." *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982). While waiver is an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure, "[i]f the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009). All elements of waiver are satisfied here. TSC's proud mantle of winning the FTC's contest to develop the nation's best robocall-blocking technology obviously shows it has always been aware of the federal structures governing telemarketing calls, including the rights conferred under the TCPA. The fact that TSC created the honeypot shows that it not only did not wish to avoid unwanted telemarketing calls—to wit, the right conferred under the TCPA that TSC now attempts to enforce—but it actively wanted to receive those telemarketing calls. There can be no clearer case of waiver, and TSC's complaint must be dismissed with prejudice, as no amount of re-pleading will cure this defect.

**C.** **TSC Does Not Have Article III Standing to Bring This Lawsuit Because It Has Not Suffered Any Injury At All—And, In Fact, TSC Benefits from the Telemarketing Calls Over Which It Now Sues**

For the same reasons that TSC's interests fall outside of the TCPA's zone of interests, and for the same reasons TSC has waived its rights under the TCPA, TSC does not have standing to bring a lawsuit in U.S. District Court based on its honeypot's receipt of telemarketing calls. TSC has brought this lawsuit without suffering the injury that is required to maintain a federal

lawsuit under Article III of the U.S. Constitution, and instead is attempting to assert entitlement to money based on a bare violation of the TCPA.[7]  However, the U.S. Supreme Court has repeatedly held that Congress may not grant standing to litigants by overriding Article III's requirement of an injury in fact. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). That injury in fact must be "concrete," "actual," and "particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury in law (*i.e.* an alleged statutory violation) is not sufficient without an injury that is "actual or imminent, not conjectural or hypothetical . . . ." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180 (2000). An injury in fact is the "indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974). The fact that a legal requirement (allegedly) has been breached does not amount to any specific harm that is the touchstone of federal jurisdiction. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486-89 (1982) (group bringing suit as taxpayers to enjoin alleged violation of the Establishment Clause did not have sufficient injury in fact to proceed in federal court).

The original Complaint and the FAC fail to allege that there has been any unwanted intrusion into TSC's privacy, any nuisance in receiving calls, any threat to its safety, or any hindrance to its ability to engage in commerce—the concerns at the center of the TCPA's enactment. *See supra*, Section III.A. Neither the Complaint nor the FAC alleges that TSC was actually charged even an nominal amount of money as a result of its honeypot receiving the

---

[7] As discussed in Hilton's Motion to Stay, filed concurrently herewith, the U.S. Supreme Court presently is reviewing the arguments presented in this Section. *Robins v. Spokeo, Inc.* 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 82 U.S.L.W. 3689 (U.S. Apr. 27, 2015) (No. 13-1339).

11

alleged telemarketing calls—there is no allegation that anyone affiliated with TSC heard any phone ring when an alleged phone call was made, or that such a phone call was answered (whether by a natural person or a computer) for any duration of time. (*See* FAC ¶¶ 24-25 (alleging that its user agreement contemplates per-minute charges but failing to allege that any call actually was answered such that any charges would be incurred).) Instead, the Complaint and FAC allege that receiving telemarketing calls through the honeypot is essential to the proper function of the algorithm that allows it to provide its core service: the identification of likely telemarketing telephone numbers. (Compl. ¶¶ 10-13; FAC ¶¶ 10-12.) TSC is deriving benefits from receiving telemarketing calls to its honeypot and suffers no injury in fact; accordingly this lawsuit must be dismissed with prejudice.

**D.**   **TSC Cannot Sue under Section 227(b)(1)(A)(iii), as That Section Only Applies to Calls to Consumers and Does Not Apply to Businesses**

The FAC also should be dismissed with prejudice because the section of the TCPA that TSC is suing under, Section 227(b)(1)(A)(iii), **does not apply to calls to businesses**. Section 227(b)(1)(A)(iii) doesn't say so expressly, instead saying in pertinent part that it applies to any call to certain types of telephone services:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> >
> > * * *
> >
> > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

But other parts of the TCPA make clear that what was just quoted above applies only to calls to consumers, not businesses.

The first part of the TCPA that makes this clear is the statute's preliminary findings. After discussing the growing problem of automated and prerecorded calls, the preliminary findings explain that "[b]anning such automated or prerecorded telephone calls to the home . . . is the only effective means **of protecting telephone consumers from this nuisance and privacy invasion**." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(12), 105 Stat 2394 (1991) (emphasis added). The findings then go on to say that "[b]usinesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce." *Id.* § 2(14). Thus, the findings conclude, "[t]he Federal Communications Commission should consider adopting reasonable restrictions on automated or prerecorded calls to businesses as well as to the home, consistent with the constitutional protections of free speech." *Id.* at § 2(15) (emphasis added). In other words, as the preliminary findings lay out, the TCPA was intended to ban certain types of calls to homes and to have the FCC consider regulating the same calls to businesses. That this is the correct reading of the TCPA's findings is confirmed by Section 227(b)(2)(A), which in fact instructs the FCC to consider regulating certain calls to businesses:

> The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission—
>
>> (A) shall consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent . . . .

47 U.S.C. § 227(b)(2)(A). The upshot is that if Section 227(b)(1)(A)(iii) already applied to calls to businesses, then Section 227(b)(2)(A) and the preliminary findings would make no sense. Worse, Section 227(b)(2)(A) would be ordering the FCC to spend time and money "considering prescribing" pointless and redundant regulations. So the only reasonable interpretation of Section 227(b)(1)(A)(iii) is that it does not apply to calls to businesses unless the FCC passes a regulation saying it applies to calls to businesses. Any other interpretation would "violate the canon against interpreting any statutory provision in a manner that would render another provision superfluous." *Bilski v. Kappos*, 561 U.S. 593, 607 (2010); see also *Lozano*, 702 F. Supp. 2d at 1010 ("It is important for courts to read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous and to avoid readings that would render terms only surplusage.").

For its part, the FCC considered prescribing a regulation for calls to businesses—and decided not to. As the FCC wrote in 1992 after explaining that "[]most commenters . . . do not raise privacy concerns with respect to prerecorded calls to businesses," the FCC was not convinced that businesses needed the same protections as do consumers under the TCPA:

> Based on the record and on the scope of the prohibitions on autodialers and prerecorded messages in the rules we adopt today [which applied to consumers], we are not persuaded that additional prohibitions on prerecorded voice message calls to businesses are necessary at this time.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8784 n.7 (1992).

And the FCC still has not been persuaded to pass any regulations restricting autodialed or prerecorded calls to businesses. *See Bank v. Independence Energy Grp. LLC*, No. 12-1369, 2014 WL 4954618, at *3 (E.D.N.Y. Oct. 2, 2014) ("The FCC, however, has not extended any further protections to businesses under the TCPA.").

That said, Hilton recognizes that in another case brought by TSC, *TSC v. Trading Advantage*, a district court in Illinois denied a motion to dismiss that argued that Section 227(b)(1)(A)(iii) did not apply to calls to businesses. *See Tel. Sci. Corp. v. Trading Advantage, LLC*, No. 14-4369, 2015 WL 672266, at *2 (N.D. Ill. Feb. 17, 2015). There the Court ruled that Section 227(b)(1)(A)(iii) "does not expressly exclude calls made to businesses (indeed, it uses the broad and inclusive word 'any')". *See id.* at *1. But the record in that case was different than the record here. The parties in *Trading Advantage* did not address Section 227(b)(2)(A) or the TCPA's preliminary findings. As a result, the Court appears not to have considered either.[8]

When Section 227(b)(2)(A) and the TCPA's prefatory findings are considered, it is clear that Section 227(b)(1)(A)(iii) does not apply to calls to businesses. TSC's complaint should be dismissed with prejudice.

**E.      Section 227(b)(1)(A)(iii)'s Reference to "Any Service" means "Any Service" like the four Specific Services listed in that Section**

Even if Section 227(b)(1)(A)(iii) applied to calls to businesses (it does not), it still would not apply to every call, but only to calls made to certain types of telephone services. Because TSC has not pleaded what type of telephone service it subscribes to, it has not made out a claim under Section 227(b)(1)(A)(iii).

---

[8] The Trading Advantage defendant instead focused on how Section 227(b)(1)(A)(iii) was ambiguous as to whether it applied to calls to businesses. See Mem. for Mot. to Dismiss at 5-9, *Trading Advantage*, No. 14-4369 (N.D. Ill. Oct. 17, 2014), ECF No. 48. Accordingly, the *Trading Advantage* defendant argued that the Court should defer to the FCC's interpretation of the provision. *See id.* at 5, 8 (relying on *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 848 (1984)). And the FCC, the Trading Advantage defendant explained, interpreted Section 227(b)(1)(A)(iii) as only applying to businesses. *See id.* at 5-9. The court did not necessarily disagree but ruled that deference to the FCC was unwarranted because Section 227(b)(1)(A)(iii) unambiguously applies to "any call." *See Trading Advantage, LLC*, 2015 WL 672266, at *1-2.

By its terms, Section 227(b)(1)(A)(iii) only applies to calls to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 42 U.S.C. § 227(b)(1)(A)(iii). TSC relies on the last term, "any service for which the called party is charged for the call." (See Compl. ¶ 29.)

But "any service" does not mean "any and all services." Two principles of statutory construction limit the term "any services" to wireless services.

*First,* other provisions of the TCPA apply to landline services—and if Section 227(b)(1)(A)(iii) applied to landlines, those provisions wouldn't make any sense. For example, Section 227(b)(1)(B) prohibits initiating "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)." If Section 227(b)(1)(A)(iii) applied to residential landlines, Section 227(b)(1)(B) would be redundant and any FCC exemptions under it would be meaningless. Similarly, Section 227(b)(1)(D) prohibits using "an automatic telephone dialing system in such a way that two or more telephone lines of a multi-line business are engaged simultaneously." Section 227(b)(1)(D), too, would be pointless if Section 227(b)(1)(A)(iii) applied to landlines.

*Second,* "any service," as a general term, "should be understood in light of the specific terms that surround it." *See Hughey v. United States*, 495 U.S. 411, 419 (1990) (applying the canon of *ejusdem generis* to interpret "such other factors as the court deems appropriate" to mean factors like those specifically listed). Otherwise, there would have been no point to Congress listing out "paging service, cellular telephone service, specialized mobile radio service,

or other radio common carrier service." Congress could have just said "any service" and left it at that.

Taken together, "any service" should be interpreted not as "any service of any kind" but as any service sharing a common denominator with the specific services Congress chose to list. *See Grammatico v. United States*, 109 F.3d 1198, 1202 n.2 (7th Cir. 1997) (applying the "common denominator" or "unifying factor" of the specific statutory terms to limit the scope of the general term).

Here the common denominator is "wireless." Every specific service listed by Congress is wireless (as distinct from landline service): pagers, cellular devices, and radio are all wireless media. And a recent FCC ruling corroborates that wireless service was the intended common denominator. In that ruling, the FCC explained that (a) the TCPA and the FCC's regulations under it give "heightened protection to wireless consumers" and, (b) regulations under Section 227(b)(1)(A)(iii) are meant to apply not just to "cellular telephone service" but more broadly to "wireless service."  FCC July 10 Ruling (pin cites unavailable).  Because TSC did not plead—and likely, cannot plead—that it received the alleged calls through a wireless telephone service, the FAC should be dismissed.

## V.   CONCLUSION

For all of the foregoing reasons Hilton respectfully requests that the Court dismiss the FAC with prejudice.

/ / /

/ / /

/ / /

/ / /

Dated: August 25, 2015                    Respectfully submitted,


                                          _/s/ Nathan M. Davis_
                                          Angela C. Agrusa – TRIAL COUNSEL
                                          (*pro hac vice* pending)
                                          Nathan M. Davis
                                          (*pro hac vice*)
                                          Liner LLP
                                          1100 Glendon Avenue, 14th Floor
                                          Los Angeles, CA 90024
                                          Tel. (310) 500-3500
                                          Fax (310) 500-3501
                                          aagrusa@linerlaw.com
                                          ndavis@linerlaw.com
                                          Counsel for Defendant

## LOCAL RULE 3.1(j) REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.1(j), Middle District of Florida, Defendant requests oral

argument on its Motion to Dismiss and estimates the time required at two (2) hours.


Dated: August 25, 2015                    Respectfully submitted,


                                          */s/ Nathan M. Davis*
                                          Angela C. Agrusa – TRIAL COUNSEL
                                          (*pro hac vice* pending)
                                          Nathan M. Davis
                                          (*pro hac vice*)
                                          Liner LLP
                                          1100 Glendon Avenue, 14th Floor
                                          Los Angeles, CA 90024
                                          Tel. (310) 500-3500
                                          Fax (310) 500-3501
                                          aagrusa@linerlaw.com
                                          ndavis@linerlaw.com
                                          Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically

filed with the Clerk of the Court using CM/ECF on this 25th day of August, 2015. I also certify

that the foregoing document is being served this day on all counsel of record identified on the

Service List via transmission of Notice of Electronic Filing generated by CM/ECF.


Dated: August 25, 2015                              Respectfully submitted,

                                                    _____
                                                    */s/ Nathan M. Davis*
                                                    Attorney


**<u>Service List</u>**

H. Karen Gatto, Esq.
lgatto@gattolaw.com
Hyslip & Taylor, LLC, LPA
8270 Woodland Center Blvd.
Tampa, FL 33614
Tel. 800.675.5507

David M. Menditto, Esq.
davidm@fairdebt411.com
Hyslip & Taylor, LLC, LPA
1100 W. Cermak Road, Suite B410
Chicago, Illinois 60608
Tel. 312.361.3509
*admitted pro hac vice*