# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| TELEPHONE SCIENCE CORPORATION, | Case No. 6:15-cv-00969-CEM-DAB |
| Plaintiff, | **MOTION TO STAY PENDING DECISION IN SPOKEO v. ROBINS** |
| vs. | |
| HILTON GRAND VACATIONS COMPANY, LLC, | |
| Defendant. | |

Defendant Hilton Grand Vacations Company, LLC ("Defendant" or "Hilton"), by and through its undersigned counsel, hereby moves this Court to stay all proceedings in this case pending the United States Supreme Court's decision of *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339), as well as granting any further relief that the Court may deem just and proper. Defendant brings this motion pursuant to L.R. 3.01 and requests relief based on this Motion, the Memorandum of Legal Authority that follows, and all prior pleadings and proceedings in this action, as well as all matters of which the Court may take judicial notice.

## TABLE OF CONTENTS

MEMORANDUM OF LEGAL AUTHORITY ......................................................................1

I.   Factual Background ..................................................................................................1

     A.   TSC's Business Model Depends On Attracting and Receiving
          Telemarketing Calls .....................................................................................1

     B.   The Supreme Court's Coming Decision in *Spokeo* ....................................3

II.  ARGUMENT ...........................................................................................................3

     A.   Legal Standard for a Discretionary Stay .....................................................3

     B.   The Potential for *Spokeo* to Simplify the Issues In Question and Reduce
          the Burdens of Litigation is Manifest—*Spokeo* May End This Case
          Entirely.........................................................................................................4

     C.   TSC was not Injured; it sat on its Claims for over a Year; It will not be
          Prejudiced by a Stay.....................................................................................6

     D.   The Early Stage of This Case Weighs In Favor of a Stay. .........................8

III. CONCLUSION.........................................................................................................9

## MEMORANDUM OF LEGAL AUTHORITY

Defendant submits this memorandum in support of its motion to stay all proceedings pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339).

*Spokeo* likely will determine whether Plaintiff Telephone Science Corporation ("TSC") has Article III standing to sue Hilton for alleged violations of the Telephone Consumer Protection Act ("TCPA"), even though TSC suffered no injury. A stay makes eminent sense for at least four reasons:

- If TSC has no standing, the Court has no subject matter jurisdiction—and all the time and resources spent on this case will have been for naught;

- The case is at its earliest stage, with no discovery having been exchanged—an ideal time to push the pause button;

- TSC was not injured by Hilton, and will not be in the future if the case is stayed—so TSC has no compelling interest in rushing to judgment; and

- TSC sat on its alleged claims for over a year-and-a-half, likely because it wanted to collect more of them—so it cannot claim prejudice from a stay.

For these reasons, and as more fully set forth below, Hilton respectfully asks the Court to stay all proceedings until the Supreme Court decides *Spokeo*.

## I.    Factual Background[1]

### A.    TSC's Business Model Depends On Attracting and Receiving Telemarketing Calls

TSC's business is to operate "Nomorobo," which TSC describes as "a service designed to help consumers avoid incoming computerized telephone calls." (First Amended Compl. [ECF No. 16] (hereinafter "FAC") ¶ 5.) To support Nomorobo, TSC maintains a "honeypot" of

---

[1] The facts as alleged in TSC's First Amended Complaint ("FAC") are discussed in more detail in Hilton's motion to dismiss, filed concurrently herewith.

telephone numbers. (*Id.* at ¶ 10.) A honeypot is "an information system designed to attract robocallers." (Compl. [ECF No. 1] (hereinafter "Compl.") ¶ 11.)[2] By attracting robocallers, TSC is "able to gather information related to" robocalling patterns that TSC then feeds into Nomorobo. (FAC ¶ 10.)

With that background, TSC alleges that it began receiving calls from Hilton in March 2014. (*Id.* at ¶ 18.) Consistent with its goal of attracting telemarketing calls to its honeypot, TSC did not sue. Instead, TSC waited until June 2015 to bring this case, by which time it had allegedly amassed 11,450 calls from Hilton to a total of 921 different telephone numbers. (Compl. ¶ 25, Ex. A.) None of these telephone numbers is alleged to be a phone line that TSC uses to communicate with anyone; they are all part of TSC's honeypot. (*Id.* ¶¶ 18-19.) Likely for that reason, TSC does not allege that the calls caused it any injury. Indeed, TSC has failed to allege that it has incurred even a nominal injury. While the FAC states that there is a per-minute charge for the telephone calls it receives (FAC ¶ 25), **it has failed to allege that its honeypot systems actually answered even one of the calls TSC alleges to have received from Hilton**, such that a per-minute charge could have been incurred.

---

[2] Due to arguments made in another lawsuit that TSC brought against a different defendant, alleging similar harm stemming from the proper functioning of its telemarketing-attracting honeypot, TSC amended its original Complaint in this action, attempting to make it less obvious that the very purpose of its existence is to profit from incoming telemarketing calls. (*Compare* Compl. ¶ 11 *with* FAC ¶ 29 ("TSC does not solicit or otherwise entice callers to call any TSC number.").) However, while a plaintiff may be permitted to correct mistakes in a complaint by amending it, "a statement in a complaint may serve as a judicial admission." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995); *accord Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 707 (2d. Cir 1989) ("The amendment of a pleading does not make it any less an admission of the party."). When the plaintiff amends a complaint but cannot "provide a credible explanation for its 'error,' the Court may disregard the contradictory pleading." *Bauer v. Tacey Goss, P.S.*, No. 12-CV-00876-JSW, 2012 WL 2838834, at *3 (N.D. Cal. July 10, 2012). Any assertion that TSC's honeypot is not designed with the primary purpose of attracting telemarketing activity should be disregarded.

But despite not being injured, TSC now seeks statutory "damages" of $1,500 for each

call. (*See* FAC ¶¶ 65, 67.) This multiplies out to a demand for over $21 million.

### B.      The Supreme Court's Coming Decision in *Spokeo*

The issue in *Spokeo* is "[w]hether Congress may confer Article III standing upon a

plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the

jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of

a federal statute." *See* Brief for Petitioner, Spokeo, Inc. v. Robins, 2015 WL 4148655 (U.S.), i

(U.S., 2015). Thus, although *Spokeo* is a Fair Credit Reporting Act ("FCRA") case, the Supreme

Court's grant of certiorari is not, by its own terms, FCRA-centric. This fits with how the *Spokeo*

defendant pitched the case to the Court, writing in his petition for certiorari that "a decision in

[*Spokeo*] would resolve similar [Article III] issues presented under a wide range of federal

statutes," including the TCPA. Petition for Writ of Cert., Spokeo, Inc. v. Robins, 2014 WL

1802228 (U.S.), 16.

Merits briefing in *Spokeo* is already under way; the case is set to be argued and decided

this coming Term. *See Boise v. ACE USA, Inc.*, No. 15-Civ-21264, 2015 WL 4077433, at *6

(S.D. Fla. July 6, 2015) (The Supreme Court "will hear oral argument for [*Spokeo*] in its

upcoming fall Term, which means that a decision is imminent within a year.").

## II.      ARGUMENT

### A.      Legal Standard for a Discretionary Stay

It is black letter law: "The power to stay proceedings is incidental to the power inherent

in every court to control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

"When deciding a motion to stay, courts consider the following non-exhaustive factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (3) whether a stay will simplify the issues in question for trial of the case." *CANVS Corp. v. FLIR Sys., Inc.*, No. 2:14-CV-180-FTM-38CM, 2014 WL 6883127, at *2 (M.D. Fla. Dec. 5, 2014). "The court's inquiry is not limited to these three factors—the totality of the circumstances governs." *Id.*

Hilton takes the factors in reverse order below.

### B.     The Potential for *Spokeo* to Simplify the Issues in Question and Reduce the Burdens of Litigation is Manifest—*Spokeo* May End This Case Entirely

The Supreme Court's decision in *Spokeo* may be the ultimate case streamliner. If the Court rules that a bare statutory violation is not enough to create Article III standing, the parties' entire dispute goes away. That is because TSC complains of no more than bare statutory violations. All the resources spent in discovery and motions practice—by the Court, by the parties, and by non-parties likely to be subpoenaed (TSC's telephone service providers, for example)—will be for naught if the Court rules in favor of Spokeo. And given the amount of money TSC is seeking (over $21 million) and its technologically novel claims (i.e., the honeypot), the resources spent between now and when *Spokeo* is decided would be considerable.

TSC may seek to distinguish *Spokeo* on account of it being an FCRA case and this being a TCPA case—but that's a distinction without a difference. The question before the Supreme Court is not statutory, but constitutional: "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm . . . ." (Ex. A.) So the answer, it stands to reason, will apply as much to uninjured TCPA plaintiffs as it does to uninjured FCRA plaintiffs.

For that reason, at least two district courts have already granted *Spokeo*-based stays in TCPA cases.[3] *See Boise*, 2015 WL 4077433, at *5; *Williams v. Elephant Ins. Co.*, No. 1:15-00119, 2015 WL 3631691, at *1 (E.D. Va. May 27, 2015) (granting TCPA defendant's motion to stay pending *Spokeo* and another Supreme Court case). Indeed, as the *Boise* court put it in dismissing the notion that *Spokeo* would not bear on TCPA claims, "the ruling in *Spokeo* may apply to the Court's subject matter jurisdiction over statutory violations generally, including violations of the TCPA". 2015 WL 4077433, at *5. Thus, the court concluded, "the significant time, expense, and resources required to litigate this case on the merits will be for naught if the Supreme Court rules either that plaintiffs like Boise lack Article III standing". *Id.* So too here. As this is a high-stakes TCPA case, discovery will be time-consuming and expensive. Unlike most TCPA cases, however, this case also involves the novelty of a corporate plaintiff trying to sue for thousands of alleged violations that it purposely facilitated. Those facts will only compound the cost and complexity of discovery.

A stay also is logical because the case is in its infancy. The potential burdens a stay could relieve are not just some discovery or some motions practice, but all discovery and nearly all motions practice. And because discovery has not yet begun, it is easy for the parties to push the

---

[3] *See also Hillson v. Kelly Servs., Inc.*, No. 2:15-10803, 2015 WL 4488493, at *1 (E.D. Mich. July 15, 2015) (FCRA case) ("The Court finds that a stay is warranted, inter alia, because *Spokeo* has the high potential to be completely dispositive of the instant case and because judicial economy favors a limited delay in awaiting the *Spokeo* decision."); *Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2015 WL 3945052, at *1 (N.D. Cal. June 26, 2015) (FCRA case) ("I am tentatively inclined, based on current law, to grant Larson's motion for class certification. However, in light of the Supreme Court's recent grant of the petition for writ of certiorari in [*Spokeo*] I will stay proceedings in this case pending resolution of that appeal."); *Stone v. Sterling Infosystems, Inc.*, No. 2:15-CV-00711-MCE, 2015 WL 4602968, at *1 (E.D. Cal. July 29, 2015) (FCRA case) ("Defendant argues that the Supreme Court's decision on the appeal could deprive Plaintiff of standing and therefore deprive this Court of subject matter jurisdiction. Accordingly, Defendant requests that this case be stayed pending the Supreme Court's decision in order to conserve judicial and party resources. The Court agrees that this is the most prudent approach.").

pause button. *See CANVS Corp.*, *2014 WL 6883127, at \*3* ("the lack of material progress in this case favors a stay.")

Simply put, because *Spokeo* may end this case and therefore simplify the issues before this Court, the case should be stayed until *Spokeo* is decided.

### C.   <u>TSC was not Injured; it sat on its Claims for over a Year; It will not be Prejudiced by a Stay</u>

The second non-exhaustive factor also heavily weighs in favor of a stay. A stay will not prejudice TSC. Nor will a stay present a tactical disadvantage to TSC (let alone a clear one). This is true for at least four reasons.

***First,*** TSC was not injured by the calls and will not be injured in the future if it receives more calls. After all, TSC's business is to "attract" these calls. (*See* Compl. ¶ 11.) So there is no urgency to resolving TSC's claims—TSC just wants to collect a statutory windfall. *See Cascades*, 2012 WL 2086469, at \*1 (granting stay because, among other things, "Cascades does not contest that it is a non-practicing entity and that it seeks only a monetary remedy.")

TSC may try to argue that it falls outside of the *Spokeo* issue before the Supreme Court because it has alleged that per-minute charges apply to the calls its honeypot receives. (FAC ¶ 25.) This argument must fail because TSC has not alleged that it answered even one of those calls, such that a per-minute charge could apply. And even if TSC had been charged for any of the calls it received, a stay of these proceedings still is appropriate. For instance, in the *Williams* case, the plaintiff alleged a monetary injury stemming from receiving **<u>and answering</u>** a call from the defendant "to a cellular telephone service for which charges incur for incoming calls . . . ." Pl.'s Original Class Action Compl. ¶ 36, Williams v. Elephant Ins. Co., No. 1:15-00119 (E.D. Va., filed Jan. 30, 2015) [ECF No. 1]; *id.* at ¶¶ 21-26 (plaintiff answered defendant's telephone

call, interacted with the pre-recorded interface, talked to a live representative in a call center, and disconnected the call). Here, TSC fails even to allege this nominal harm, indicating that a stay is even more appropriate now in anticipation of the impending *Spokeo* decision.

The *Williams* decision is in keeping with modern Supreme Court jurisprudence applying Article III standing. While in a prior era, any colorable argument may have been enough to come before a federal court, "*Lujan v. National Wildlife Federation*, 497 U.S. 871 . . . (1990) . . . and its progeny" "substantially altered federal jurisprudence for plaintiffs seeking standing . . . ." *Sierra Club v. Peterson*, 185 F.3d 349, 361 (5th Cir. 1999) *on reh'g*, 228 F.3d 559 (5th Cir. 2000); *see also id.* at 361 n.13 (recognizing abrogation of prior jurisprudence, including *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669 (1973), and its acceptance of trifling interests as a hook for Article III standing). To come before a federal court, TSC must allege harm that is concrete, particularized, and actual or imminent, not conjectural or hypothetical (or in TSC's case, nonexistent). *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Even after filing an amended complaint, TSC still has failed to allege any harm at all, let alone enough to come within Article III's ambit.

***Second,*** this case is in its infancy. There is no case management schedule, discovery schedule, or trial date. So TSC has not relied on any set schedule. TSC will not be unduly prejudiced or harmed by a stay of proceedings, which only stands to delay TSC's potential recovery for a period likely less than twelve months. *See Boise*, 2015 WL 4077433, at *6 (a stay pending the result of the *Spokeo* decision is neither indefinite nor immoderate as the Supreme Court has already granted certiorari on the two relevant cases and will hear oral argument for them in its upcoming fall Term). Conversely, without a stay, Hilton will be forced to endure

onerous discovery and significant expenses, which may be needlessly incurred if the Supreme

Court's decision in *Spokeo* confirms that TSC has no Article III standing. *See id.* (no prejudice to

plaintiff where case in its infancy and the *Spokeo* decision might prevent unnecessary onerous

and expensive discovery).

*Third,* TSC could have sued in March 2014 when it allegedly started receiving calls from

Hilton. Instead it sat on its claims for over a year-and-a-half—presumably to collect more

alleged violations—before first filing suit in June 2015. It cannot now complain about waiting

until *Spokeo* is decided. *See Fauley*, 2015 WL 3622542 ("I note that the case was not filed until

nearly two years after plaintiff received the fax in question, indicating that plaintiff was not

concerned with delay").

*Fourth,* there is no scenario where TSC wins a final, un-appealable judgment for

anywhere near the amount it is seeking before the Supreme Court rules in *Spokeo*. Any decision

or judgment that TSC could theoretically win would thus be nullified if *Spokeo* came out against

TSC. There is no meaningful upside for TSC, then, to having this case go forward today. There

is, however, considerable downside, because even if this case goes well for TSC in the interim,

all the resources TSC will have spent could end up being for nothing.

Taken together, staying this case will not prejudice TSC. To the contrary, a stay is in

TSC's interest (rationally speaking). The case should therefore be stayed until the Supreme Court

rules in *Spokeo*.

**D.**     **The Early Stage of This Case Weighs In Favor of a Stay.**

As noted above, this case is in its infancy. TSC has done no more than file the initial

Complaint and the FAC. The pleadings have not been closed and discovery has not yet

commenced. The early stage of litigation in this case weighs heavily in favor of granting a stay.

*See Capriola Corp. v. LaRose Indus., LLC*, No. 8:12–cv–2346, 2013 WL 1868344, at *3 (M.D. Fla. Mar. 11, 2013 ) (ordering a stay where litigation was "in the incipient stage"); *SurfCast, Inc. v. Microsoft Corp.*, No. 2:12–CV–333, 2014 WL 6388489, at *2 (D. Me. Nov. 14, 2014) ("The earlier the stage of proceedings, the greater the reason to grant a stay." (citation omitted)). Thus, in addition to all of the other factors, avoiding time-consuming and expensive discovery militates in favor of a stay.

## III.   <u>CONCLUSION</u>

Hilton respectfully asks the Court to stay all proceedings until the Supreme Court rules in *Spokeo*. Because *Spokeo* will likely determine if this Court has subject matter jurisdiction over TSC's claims, *Spokeo* could end this case outright. A stay pending *Spokeo* should therefore be entered to prevent waste of the Court's, the parties', and key non-parties' time and resources. This is especially so since the case is young and discovery will be expensive and burdensome. TSC, for its part, would benefit from a stay just as Hilton would as a stay would preserve TSC's resources, too. In all events, TSC would not be prejudiced because it was not injured, has no risk of future injury, and was in no rush to bring this lawsuit, having sat on its claims for over a year.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: August 25, 2015                    Respectfully submitted,


                                          */s/ Nathan M. Davis*
                                          Angela C. Agrusa – TRIAL COUNSEL
                                          (*pro hac vice* pending)
                                          Nathan M. Davis
                                          (*pro hac vice*)
                                          Liner LLP
                                          1100 Glendon Avenue, 14th Floor
                                          Los Angeles, CA 90024
                                          Tel. (310) 500-3500
                                          Fax (310) 500-3501
                                          aagrusa@linerlaw.com
                                          ndavis@linerlaw.com
                                          Counsel for Defendant

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 3.01(g), on August 21, 2015, counsel for Hilton, Nathan M. Davis

of Liner LLP, conferred with Plaintiff's counsel, David Michael Menditto, regarding the relief

requested herein. At that time, Mr. Menditto advised that Plaintiff does not agree to the relief

requested herein.

Respectfully submitted,


<u>/s/ Nathan M. Davis</u>
Angela C. Agrusa – TRIAL COUNSEL
(*pro hac vice* pending)
Nathan M. Davis
(*pro hac vice*)
Liner LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Tel. (310) 500-3500
Fax (310) 500-3501
aagrusa@linerlaw.com
ndavis@linerlaw.com
Counsel for Defendant

## LOCAL RULE 3.1(j) REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.1(j), Middle District of Florida, Defendant requests oral

argument on its Motion to Stay and estimates the time required at one (1) hour.


Dated: August 25, 2015                    Respectfully submitted,


                                          */s/ Nathan M. Davis*
                                          Angela C. Agrusa – TRIAL COUNSEL
                                          (*pro hac vice* pending)
                                          Nathan M. Davis
                                          (*pro hac vice*)
                                          Liner LLP
                                          1100 Glendon Avenue, 14th Floor
                                          Los Angeles, CA 90024
                                          Tel. (310) 500-3500
                                          Fax (310) 500-3501
                                          aagrusa@linerlaw.com
                                          ndavis@linerlaw.com
                                          Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on this 25th day of August, 2015. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notice of Electronic Filing generated by CM/ECF.


Dated: August 25, 2015                       Respectfully submitted,

                                              _____
                                                   */s/ Nathan M. Davis*
                                                        Attorney


**Service List**

H. Karen Gatto, Esq.
lgatto@gattolaw.com
Hyslip & Taylor, LLC, LPA
8270 Woodland Center Blvd.
Tampa, FL 33614
Tel. 800.675.5507

David M. Menditto, Esq.
davidm@fairdebt411.com
Hyslip & Taylor, LLC, LPA
1100 W. Cermak Road, Suite B410
Chicago, Illinois 60608
Tel. 312.361.3509
*admitted pro hac vice*