## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Telephone Science Corporation,     Case No. 6:15-cv-00969-CEM-DAB

     Plaintiff,

v.     **SECOND AMENDED COMPLAINT**

Hilton Grand Vacations Company, LLC,     **JURY TRIAL DEMANDED**

     Defendant.

_____/

### PRELIMINARY STATEMENT

1.     This is an action for damages and equitable relief based on Defendant's alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

### PARTIES

2.     Plaintiff, Telephone Science Corporation ("Plaintiff" or "TSC"), is a Delaware corporation that maintained its principal place of business in Mount Sinai, New York at all times relevant to this action.

3.     Defendant, Hilton Grand Vacations Company, LLC ("Defendant" or "Hilton"), is a Delaware limited liability company that maintained its

principal place of business in Orlando, Florida at all times relevant to this action.

## JURISDICTION AND VENUE

4.  Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the TCPA.

5.  Pursuant to 28 U.S.C. § 1391(b), venue is proper because Hilton resides in this judicial district.

## BACKGROUND

### *Telephone Science Corporation's Business*

6.  TSC operates "Nomorobo," a service designed to help consumers avoid incoming computerized telephone calls that the Federal Trade Commission ("FTC") refers to as "robocalls."

7.  According to the Federal Communications Commission ("FCC"), "the term 'robocalls' includes calls made either with an automatic telephone dialing system (['ATDS'] or 'autodialer') or with a prerecorded or artificial voice." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7964, footnote 1 (2015).

8.      In 2013, Nomorobo was one of two winners of the FTC's first Robocall Challenge, a public contest to design a system to stop unsolicited telemarketing calls before the calls can ring through to the subscriber of the called telephone number.  *See* "FTC Announces Robocall Challenge Winners,"   https://www.ftc.gov/news-events/press-releases/2013/04/ftc-announces-robocall-challenge-winners.

9.      The Nomorobo technology distinguishes between "blacklist" robocaller telephone numbers and "whitelist" numbers associated with acceptable incoming calls.  *Id.*

10.     As of the date on which this second amended complaint is being filed, the Nomorobo service has helped consumers to avoid over 78 million unwanted robocalls.

11.     In order to provide the Nomorobo service to consumers, TSC maintains a "honeypot" group of telephone numbers, from which TSC is able to gather information related to inbound calls.

12.     The TSC "honeypot" is comprised of thousands of telephone numbers to which TSC subscribes.

13.     As a result, TSC is able to compile a large quantity of data related to calls placed to telephone numbers in the TSC "honeypot."

14.    TSC analyzes the data through a robocall detection algorithm, which enables TSC to detect high frequency robocalling patterns and distinguish between calls placed by robocallers and calls placed by non-robocallers.

15.    ***Only Hilton's calls to telephone numbers in the TSC "honeypot" are at issue in this case***.

<u>Hilton's Business</u>

16.    Hilton develops, manages, markets, and operates a system of time-share resorts that "members of the Hilton family" can jointly own along with other "members of the Hilton family."

17.    Hilton advertises its resort properties through direct telephone marketing.

18.    In connection with Hilton's business, Hilton places telephone calls using a "predictive dialer."

19.    "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  *In the Matter of Rules & Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

20.   In *Connelly v. Hilton Grand Vacations Company, LLC*, No. 12-cv-00599 (S.D. Cal., filed Mar. 9, 2012), Hilton filed a declaration of its Director of Data Operations – Marketing Systems, which stated, in part:

   a.   In March of 2008, HGV[1] purchased the Liberation 6000 system ("Liberation") from TDI, Inc.  Liberation allows HGV to configure separate equipment for calls to cell numbers (the "Cellular Equipment") and calls to landline numbers (the "Landline Equipment").

   b.   The Landline Equipment dials landline numbers in "***Predictive Mode***," utilizing equipment and programs known as a pacer and call progress analysis.   A pacer controls the rate at which the landline numbers are dialed by using a ***predictive algorithm*** allowing landline numbers to be dialed in advance of agent availability.

   c.   By contrast, the Cellular Equipment does not use the pacer nor the call progress analysis and thereby ***prevents cell numbers from being automatically or otherwise dialed without human intervention***.

   * * *

   d.   HGV takes steps to accurately maintain records distinguishing between the landline and cell numbers of its customers.   HGV

---

[1] "HGV" refers to Hilton.

receives records of contact information for Hilton Family hotel guests and Hilton HHonors Program transactions from Hilton Worldwide, Inc. ("Hilton"). HGV standardizes and verifies those records through a number of **computer processes** referred to as enhance transform and load ("ETL") and with the assistance of third parties. The verification process includes confirming that telephone numbers are properly designated as landline or cell numbers. HGV refers to the ETL and verification processes collectively as a "**hygiene process**."

e. Prior to calling customers, HGV selects customers' records from the [Marketing Data Warehouse ("MDW")]. The selected customer records are loaded onto a staging area. From the staging area, records are loaded onto either the Cellular Equipment or the Landline Equipment based on their designation.

\* \* \*

f. **There is no way from HGV's records alone, nor from any third party subscription service [of which] HGV is aware, to identify individuals that provided a [voice over Internet protocol ("VoIP")] number. Each individual would need to confirm whether the telephone number provided is a VoIP number and identify the devices used to receive calls to that VoIP number.**

(*See* Declaration of John Allen, attached hereto as "Exhibit A," ¶¶ 3-7, 12) (emphases added).

21. According to the Hilton, it utilizes a computerized "hygiene process" to determine whether the telephone numbers it loads into its dialing system are provided by a cellular service provider.

22.     Hilton acknowledges that its computerized "hygiene process" is unable to discern whether the telephone numbers it loads into its predictive dialer are provided by a VoIP service provider.

23.     Hilton acknowledges that it could confirm whether a telephone number is provided by a VoIP service provider by contacting the subscriber or regular user of that telephone number.

24.     Hilton loaded TSC Numbers into its telephone dialing equipment that places telephone calls in predictive mode.

25.     The pattern and frequency of Hilton's telephone calls to TSC Numbers support the allegation that Hilton used a predictive dialer to place telephone calls to TSC.

26.     The below examples support the allegation that Hilton used a predictive dialer to place telephone calls to TSC:

a.      On March 14, 2014, Hilton placed nine (9) telephone calls from a telephone number ending in -3533 to TSC Numbers ending in -2463, -4485, and -4942, during a period of less than five (5) hours.

b.    On May 7, 2014, Hilton placed twenty-one (21) telephone calls from a telephone number ending in -3560 to TSC Numbers ending in -7774, -8228, -9493, -4305, and -4350.

c.    On August 18, 2014, Hilton placed four (4) telephone calls from a telephone number ending in -3894 to a TSC Number ending in -1899.

d.    On November 18, 2014, Hilton placed four (4) telephone calls from a telephone number ending in -3532 to a TSC Number ending in -3008.

e.    On December 10, 2014, Hilton placed four (4) telephone calls from a telephone number ending in -3516 to a TSC Number ending in -3216.

f.    On January 21, 2015, Hilton placed four (4) telephone calls from a telephone number ending in -3517 to a TSC Number ending in -4288.

g.    On February 25, 2015, Hilton placed four (4) telephone calls from a telephone number ending in -3531 to a TSC Number ending in -3268.

h.     On May 13, 2015, Hilton placed fifty-four (54) telephone calls from telephone number (407) 722-3570 to TSC Numbers.

i.     On May 14, 2015, Hilton placed four (4) telephone calls from a telephone number ending in -3570 to a TSC Number ending in -7160.

j.     On July 30, 2015, ***one (1) month after Hilton was served with process in this case,*** Hilton placed sixteen (16) telephone calls from a telephone number ending in -6807 to four (4) TSC Numbers ending in -4797, -0065, -1769, and -7774.

k.     On September 11, 2015, Hilton placed nine (9) telephone calls from a telephone number ending in -6809 to three (3) TSC Numbers ending in -5779, -9047, -3121, and -9047.

l.     On December 24, 2015, Hilton placed twelve (12) telephone calls from a telephone number ending in -7157 to four (4) TSC Numbers ending in -9489, -5288, -6505, and -0560.

m.     On February 24, 2016, Hilton placed twelve (12) telephone calls from a telephone number ending in -7157 to four (4) TSC Numbers ending in -5999, -8819, 9701, and -1512.

## HILTON'S CALLS TO TSC

27.　On or around March 2014, Hilton began calling telephone numbers to which TSC was the subscriber (the "TSC Numbers").

28.　Each TSC Number is part of the TSC "honeypot."

29.　TSC was the subscriber to each TSC Number Hilton called at the time of the call.

30.　TSC continues to subscribe to each TSC Number.

31.　Prior to the time when Hilton began calling the TSC Numbers, TSC had not provided express consent to Hilton to call any TSC Number.

32.　At no time after Hilton began calling the TSC Numbers has TSC provided express consent to Hilton to call any TSC Number.

33.　 Each TSC Number is assigned to a VoIP telephone service that assesses a monthly per-line charge for each TSC Number.

34.　In addition, TSC's VoIP telephone service assesses a per-minute charge as a result of inbound calls that TSC answers.

35.　TSC does not incur a per-minute charge for inbound calls that TSC does not answer.

36.   Each TSC Number consists of a ten (10) digit number, which a caller may reach by dialing the TSC Number in the same manner as the caller dials any other telephone number.

37.   Each TSC Number is reached through the Public Switched Telephone Network.

38.   There is no distinguishing feature or characteristic of a TSC Number to make it more desirable or attractive to call than any other telephone number.

39.   TSC does not solicit or otherwise entice callers to call any TSC Number.

40.   TSC has never called any Hilton telephone number from any TSC Number.

41.   On each occasion that Hilton placed a telephone call to a TSC Number, Hilton did so voluntarily.

42.   As of April 19, 2016, Hilton had placed over twenty thousand (20,000) robocalls to the TSC Numbers using a predictive dialer.

43.   As of April 19, 2016, TSC has answered approximately nine thousand nine hundred (9,900) robocalls that Hilton placed to TSC Numbers.

44.   In addition, since July 7, 2015, seven (7) days after Hilton was served with the original complaint, Hilton has placed approximately seven thousand seven hundred (7,700) robocalls to TSC Numbers.

45.   The Hilton robocalls that TSC has answered are set forth in Exhibit B to this second amended complaint.

46.   TSC incurred per-minute charges as a direct and proximate result of Hilton's robocalls that TSC answered.

47.   ***TSC is only seeking relief based on past and future Hilton robocalls to TSC Numbers, which TSC answered (or will answer) and for which TSC has incurred (or will incur) per-minute charges.***

48.   TSC is not seeking relief based on any Hilton robocalls that TSC has not (or does not) answer and for which which TSC has not incurred (or will not incur) per-minute charges.

## APPLICABLE LAW

49.   Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

50.    In a letter from the National Association of Attorneys General to executives at five (5) of the country's largest telephone service provides, forty-five (45) State Attorneys General stated:

> As state Attorneys General, we are on the front lines of consumer protection for millions of Americans harassed by unwanted and unwelcome robocalls.   Though our offices work diligently to prosecute those who violate state and federal laws intended to prevent such calls, our enforcement efforts alone cannot stop the problem.   The better solution is to stop intrusive calls before they ever reach the consumer.

*See* July 22, 2015 Letter attached hereto as "Exhibit C."

51.    The TCPA empowers private individuals and entities to "tak[e] on the role of a private attorney general" in enforcing the provisions of the Act. *See Lary v. Trinity Phys. Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015); *citing Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010).

52.    The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1) (emphasis added).

53.    A predictive dialer is an ATDS within the meaning of the TCPA. *Smith v. MarkOne Fin., LLC*, 2015 U.S. Dist. LEXIS, *7-9 (M.D. Fla. Feb. 2,

2015); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

54.  The TCPA provides, in part:

> (b)  RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
>> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>>
>>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>>
>>> * * *
>>>
>>>> (iii) to ***any telephone number*** assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or ***any service for which the called party is charged for the call***…

47 U.S.C. §§ 227(b)(1)(A)(iii) (emphases added).

55.  The prohibition in Section 227(b)(1)(A)(3) applies to telephone calls placed to any telephone number that meets the criteria stated in that

subsection, regardless of whether the telephone number is used for business or personal purposes.  *See Warnick v. Dish Network LLC*, 2014 U.S. Dist. LEXIS 138381, *31-36 (D. Colo. Sep. 30, 2014).

56.     The VoIP telephone service to which the TSC numbers are assigned is a "service for which the called party is charged for the call" within the meaning of the TCPA.  *See Lynn v. Monarch Recovery Mgmt., Inc.*, 586 Fed. Appx. 103, 103-104 (4th Cir. 2014); *affirming Lynn v. Monarch Recovery Mgmt., Inc.*, 2013 U.S. Dist. LEXIS 41700, *37-38 (D. Md. Mar. 25, 2013) (VoIP service for which plaintiff was charged $0.0149 per minute for each of defendant's incoming calls "fits squarely within the separate prohibition of the [TCPA's] call charged provision.")

57.     TSC incurred out-of-pocket expenses in the form of per-minute charges as a direct and proximate result of the calls Hilton placed to the TSC Numbers.

58.     TSC's out-of-pocket expenses satisfy the injury-in-fact and causation requirements of Article III of the United States Constitution.  *See Doe v. Chao*, 540 U.S. 614, 627 n.12, 124 S. Ct. 1204, 1212 n.12 (2004) ("out-of-pocket expenses…suffice to qualify under any view of actual damages.").

59.  The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the person or entity subscribing to the called number at the time the telephone call is made. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-52 (11th Cir. 2014).

60.  Any consent that may have been previously given as to any TSC Number lapsed when that number was reassigned. *Sterling v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 186432, *6-7 (W.D.N.Y. Nov. 22, 2013).

61.  A caller that places calls to a reassigned telephone number without the express consent of the called party is deemed to have "constructive knowledge" of the reassignment after one phone call has been placed to that reassigned number. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7999-8000, ¶ 72 (2015).

62.  TSC was the "called party" in each telephone call Hilton placed to a TSC Number. *See Telephone Science Corp. v. Trading Advantage, LLC*, 2015 U.S. Dist. LEXIS 18591, *3 (N.D. Ill. Feb. 17, 2015) (based on unambiguous language in TCPA, "TSC's allegations fall within the statutory prohibition of § 227(b)(1)(A)(iii)").

## COUNT ONE

### Violation of the Telephone Consumer Protection Act

63.    Plaintiff re-alleges and incorporates by reference Paragraphs 6 through

59 above as if fully set forth herein.

64.    The TCPA provides the following private right of action to individuals

and entities:

PRIVATE RIGHT OF ACTION. – A person *or entity* may, if otherwise
permitted by the laws or rules of court of a State, bring in an appropriate
court of that State –

(A) an action based on a violation of this subsection or the
regulations prescribed under this subsection to enjoin such
violation,

(B) an action to recover for actual monetary loss from such a
violation, or to receive $500 in damages for each such violation,
*whichever is greater*, or

(C) both such actions.

47 U.S.C. § 227(b)(3) (emphases added).

65.    The damages recoverable under the TCPA are designed to make the

practice of violating the Act "prohibitively expensive, which is an

acceptable means of accomplishing the statute's goal of deterrence."

*Phillips Randolph Enterprises, LLC v. Rice Fields*, 2007 U.S. Dist.

LEXIS 3027, *7 (N.D. Ill. Jan. 11, 2007).

66.   Hilton violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by using an ATDS to call TSC at a telephone number assigned to a service for which TSC is charged for the call without TSC's prior express consent.

67.   The TCPA provides, in part:

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

68.   The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

69.   In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013);

- 18 -

*Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

70. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; *see also Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

71. Hilton voluntarily placed telephone calls to the TSC Numbers using an ATDS.

72. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 1316, 1322 (S.D. Fla. 2012), *aff'd* 755 F.3d 1265 (11th Cir. 2014).

73. Hilton failed to adequately place intermittent live verification calls to the TSC Numbers to ensure that TSC had provided its express consent to Hilton to call those telephone numbers.

74.    Had Hilton placed live verification calls to the TSC Numbers, Hilton would have been able to determine that it was calling a telephone number for which it did not have express consent to call.

75.    Hilton willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by using an ATDS to call TSC at a telephone number assigned to a service for which TSC is charged for the call without TSC's prior express consent.

## JURY DEMAND

76.    TSC demands a trial by jury.

## PRAYER FOR RELIEF

77.    TSC prays for the following relief:

a.    An order enjoining Hilton from placing further telephone calls to the TSC Numbers pursuant to 47 U.S.C. § 227(b)(3).

b.    Judgment against Hilton for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Hilton made in violation of the TCPA.

c.    For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC, LPA

Date: May 25, 2016                    By:   /s/ David M. Menditto
                                          One of Plaintiff's Attorneys

*Of Counsel*                          *Pro Hac Vice Counsel*
H. Karen Gatto, Esq.                  David M. Menditto, Esq.
Florida Bar No. 0190527               Illinois Bar No. 6216541
Hyslip & Taylor, LLC, LPA             Hyslip & Taylor, LLC, LPA
8270 Woodland Center Blvd.            1100 W. Cermak Rd., Suite B410
Tampa, FL 33614                       Chicago, IL  60608
(P) 800-675-5507                      (P) (312) 380-6110
(E) kgatto@gattolaw.com               (F) (312) 361-3509
                                      (E) davidm@fairdebt411.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2016, I filed the foregoing Plaintiff's Second Amended Complaint through the Court's electronic filing system and thereby served counsel of record as follows:

Mr. Lawrence D. Silverman
Ms. Sandra Jessica Millor
Akerman LLP
1 Southeast Third Avenue
25th Floor
Miami, Florida 33131-1714
Lawrence.Silverman@akerman.com
Sandra.Millor@akerman.com

*Local Counsel for Defendant*

Ms. Angela C. Agrusa
Mr. Nathan M. Davis
Liner LLP
14th Floor
100 Glendon Avenue
Los Angeles, California 90024-3503
Aagrusa@linerlaw.com
Ndavis@linerlaw.com

*Pro Hac Vice Counsel for Defendant*

   */s/ David M. Menditto*
David M. Menditto